523 A.2d 758

**COMMONWEALTH of Pennsylvania**

v.

**Bruce DIVINCENZO, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 17, 1985.

Filed Feb. 24, 1987.

Petition for Allowance of Appeal Denied Aug. 28, 1987.

Dennis Haines, Erie, for appellant.

Timothy Lucas, Assistant District Attorney, Erie, for Commonwealth, appellee.

Before ROWLEY, DEL SOLE and TAMILIA, JJ.

PER CURIAM:

The following judgments of sentence are vacated and appellant is discharged:

At No. 444 of 1984, one to two years for Count 5, indecent assault.

At No. 445B of 1984, one to two years for Count 3, indecent assault; one to two years for Count 4, simple assault; one to two years for County 6, simple assault; one to two years for count 8, simple assault; one to two years for Count 13, indecent assault; and one to two years for Count 14, simple assault.

The remaining judgments of sentences imposed on the final indecent assault, and various burglary, rape, and attempt convictions are affirmed.

TAMILIA, J., files a concurring and dissenting opinion.

TAMILIA, Judge, concurring and dissenting:

This is an appeal from judgment of sentence entered following a jury trial wherein appellant was convicted of multiple rapes, burglaries and related crimes.[1]  I write separately on the concurrence as well as the dissent as the majority will file an unpublished Memorandum whereas I believe the issues raised in sentencing are of sufficient importance to warrant publication of the dissent.  Therefore, an entire analysis will be more understandable than publishing only that aspect relating to sentencing.

Appellant's convictions arose out of a series of criminal assaults against eight separate female victims in the Erie area between December 4, 1983 and February 13, 1984. Initially, three informations charged appellant with numer-

---

**1.** Burglary 18 Pa.C.S.A. 3502 (6 counts)
Criminal Attempt (rape) 18 Pa.C.S.A. 901 (2 counts)
Indecent Assault 18 Pa.C.S.A. 3126 (3 counts)
Rape 18 Pa.C.S.A. 3121 (2 counts)
Simple Assault 18 Pa.C.S.A. 2701 (4 counts)
Criminal Attempt (involuntary deviate sexual intercourse) 18 Pa.C.S.A. 901 (1 count)

ous offenses including burglary, rape, criminal attempt, indecent assault and simple assault. At the conclusion of trial, appellant was found guilty on all counts, with the exception of one count of burglary and one count of simple assault at information No. 445–B of 1984. A rape charge at information No. 445–A of 1984 was reduced to indecent assault pursuant to a plea of *nolo contendere*. The aggregate sentence imposed was a term of imprisonment totalling 81 to 162 years, composed of eight terms of 10 to 20 years and a term of 1 to 2 years, all to be served consecutively. A concurrent term of imprisonment of 5 to 10 years was also imposed in addition to seven concurrent terms of 1 to 2 years.

In this appeal, appellant has raised five alleged points of error for our review. The first two concern the ineffectiveness of trial counsel and will be considered simultaneously. Appellant contends that trial counsel was ineffective for failing to challenge, via post-verdict motions, both the sufficiency of the evidence and the joinder of the various offenses for trial.

The initial inquiry, upon review of ineffectiveness claims, must be to determine whether the issue underlying the complaint is of arguable merit. Thereafter, our focus shifts to whether the course of action chosen by trial counsel had some reasonable basis designed to effectuate the interests of his client. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967); *Commonwealth v. Kerpan*, 508 Pa. 418, 498 A.2d 829 (1985).

The first of appellant's claims is that the evidence was insufficient to sustain the verdict because it was wholly circumstantial. Recently our Supreme Court has stated, in *Commonwealth v. Holcomb*, 508 Pa. 425, 498 A.2d 833 (1985), "We have long held that circumstantial evidence alone can be sufficient to convict a defendant of a crime." (citations omitted).

In determining whether the evidence is sufficient to support appellant's multiple convictions, we must view all the evidence, together with all reasonable inferences therefrom,

upon which the fact finder could have based its verdict and then ask whether that evidence, when viewed in the light most favorable to the Commonwealth, was sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Hamilton,* 339 Pa.Super. 1, 3, 488 A.2d 277, 278 (1985); *Commonwealth v. Crawford,* 334 Pa.Super. 630, 632–633, 483 A.2d 916, 917 (1984). The Commonwealth's burden to prove guilt beyond a reasonable doubt may be met by relying on wholly circumstantial evidence. *Commonwealth v. Shirey,* 343 Pa.Super. 189, 494 A.2d 420 (1985).

After a thorough review of the trial transcript, it is evident that the circumstantial evidence presented in the case *sub judice,* viewed in a light most favorable to the Commonwealth, was clearly sufficient to prove appellant's guilt beyond a reasonable doubt. Due to the voluminous testimony taken at trial, it behooves us to forgo a lengthy recitation of the individual crimes, but note, *infra,* the similarities in the episodes with which appellant was charged.

Since it is apparent from the record that there was sufficient evidence to convict appellant of all charges, trial counsel cannot be held ineffective for failing to perform a futile act; any post-trial motion based on the sufficiency of the evidence would have been unsuccessful. *See Commonwealth v. Davis,* 313 Pa.Super. 355, 459 A.2d 1267 (1983).

Appellant further contends that trial counsel's failure to challenge the consolidation of the offenses for trial through post-trial motions, notwithstanding his timely motion to sever the sets of offenses for trial, constitutes ineffectiveness. It is well established that the propriety of consolidating separate indictments for trial is a matter of discretion with the trial judge, and his decision will be reversed only for manifest abuse of discretion or prejudice to the defendant. *Commonwealth v. Thomas,* 328 Pa.Super. 393, 399, 477 A.2d 501, 504 (1984).

The test of whether consolidation is proper is related to the test of whether evidence of one crime may be admitted at the trial for another. The present rule in Pennsyl-

vania is that the consolidation is proper (i.e., the denial of a motion for severance is not an abuse of discretion) if (1) the facts and elements of the two crimes are easily separable in the minds of the jury; and (2) the crimes are such that the fact of the commission of each crime would be admissible as evidence in a separate trial for the other. (citations omitted)

*Commonwealth v. Galloway,* 302 Pa.Super. 145, 154, 448 A.2d 568, 573 (1982); *Commonwealth v. Terrell,* 234 Pa.Super. 325, 328, 339 A.2d 112, 114 (1975).

Additionally, evidence of other crimes is admissible to prove: (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the other; or (5) identity. *Thomas,* 328 Pa.Superior Ct. at 400, 477 A.2d at 505.

Thus, offenses may be joined for trial where the separate offenses show the defendant's unusual or distinctive *modus operandi.* In order to establish a common thread between crimes,

[t]he Commonwealth must show more than the other crimes are of the same class as the one for which the defendant is being tried. Rather, there must be such a high correlation in the details of the crimes that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others.

*Commonwealth v. Morris,* 493 Pa. 164, 176, 425 A.2d 715, 721 (1981).

No error is evident in trial counsel's failure to challenge, via post-trial motion, the consolidation of the offenses for trial. First, it is clear that the facts of the incidents were easily separable in the minds of the jury. The evidence of each episode was not complex and there has been no suggestion that the consolidation caused the jury to be confused in weighing the evidence. Moreover, the incidents are so similar in perpetration that they can properly be placed in that uncommon category of crimes where they are

deemed to be of common scheme, plan or design. *See Thomas, supra.*

In support of this conclusion, the record establishes the following similarities: (1) all assaults occurred at approximately the same time during the evening and only on nights the appellant's wife was working; (2) entry was made through the front door in all but one case; (3) all the victims were physically assaulted and, in the cases where the victims could not control the situation, were sexually assaulted; (4) all sexual assaults were done from the rear and there was never a vaginal ejaculation; (5) in all the sexual assaults, a lubricant was used and the substance was wiped up or removed by the perpetrator; (6) in all cases, the perpetrator was a white male wearing a dark knit ski mask which covered his entire face except his eyes; (7) in all cases, the perpetrator wore a dark ski jacket or dark nylon jacket and wore gloves; (8) the victims were all young white females; and (9) all the assaults occurred in the same general neighborhood over a nine-week period.

Therefore, since joinder of the episodes was proper, counsel can not be held ineffective for failing to pursue the claim in post-trial motions since such claim would have been properly denied. *See Davis, supra.*

Appellant also asserts that he was given concurrent terms of imprisonment for offenses that should have been deemed to merge, as a matter of law, with other offenses for which sentence had also been imposed. Specifically, appellant was sentenced to two consecutive terms of imprisonment of 10 to 20 years for rape and burglary against one victim and also two concurrent terms of 1 to 2 years for indecent and simple assault against her. Likewise, two consecutive terms of imprisonment of 10 to 20 years were imposed for rape and burglary against a second victim as were two concurrent terms of 1 to 2 years for indecent and simple assault. Concurrent terms of 1 to 2 years were also imposed for simple assaults against two other victims in conjunction with consecutive terms of 10 to 20 years for burglaries. Finally, a concurrent term of 1 to 2 years was

imposed for indecent assault against a fifth victim in addition to a consecutive term of 10 to 20 years for burglary. This issue can be easily resolved as the Commonwealth concedes that the court erred in imposing the aforementioned concurrent sentences. It is clear, pursuant to 18 Pa.C.S.A. 3502(d), that sentencing appellant on both the burglary charges and the lesser included offenses of indecent and simple assault constituted error. 18 Pa.C.S.A. 3502(d) provides that:

A person may not be convicted both for burglary and for the offense which it was his intent to commit after the burglarious entry or for an attempt to commit that offense, unless the additional offense constitutes a felony of the first or second degree.

Therefore, I agree with the majority in vacating the concurrent sentences for indecent and simple assault while affirming the sentences for burglary and rape. There is no need for a remand to resentence appellant on these matters since it is clear the court below, by imposing concurrent terms for the merged offenses, intended to treat the other offenses as the principal and controlling crimes. *See Commonwealth v. Nelson*, 337 Pa.Super. 292, 486 A.2d 1340 (1984).

On a related point, appellant asserts ineffectiveness of counsel for his attorney's failure to challenge the constitutionality of 18 Pa.C.S.A. 3502(d) (supra). Appellant claims this provision draws an irrational distinction between offenses which will merge or not merge with the principle offense of burglary. This argument stems from appellant's consecutive terms of 10 to 20 years for two rapes imposed as well as consecutive terms of 10 to 20 years imposed for two burglaries. Appellant's contention is totally devoid of merit. The burden rests with appellant, who is alleging unconstitutionality, to show that the provision "clearly, palpably and plainly violates the constitution." *Commonwealth v. Sutley*, 474 Pa. 256, 260–261, 378 A.2d 780, 782 (1977) (citations omitted). In *Commonwealth v. Whetstine*,

344 Pa.Super. 246, 496 A.2d 777 (1985), Cirillo, J. (now President Judge) stated:

The doctrine of merger of offenses for sentencing insures that separate sentences are not imposed for what in practical effect was a single criminal act. *Commonwealth v. Crocker*, 280 Pa.Super. 470, 421 A.2d 818 (1980). In deciding whether offenses merge, the question is whether the offenses charged "necessarily involve" one another, or whether any additional facts are needed to prove additional offenses once the primary offense has been proven. *See Commonwealth v. Ayala*, 492 Pa. 418, 424 A.2d 1260 (1981). In deciding merger questions, we focus not only on the similarity of the elements of the crimes, but also, and primarily, on the facts proved at trial, for the question is whether those facts show that in practical effect the defendant committed but a single criminal act. *Commonwealth v. Boettcher*, 313 Pa.Super. 194, 459 A.2d 806 (1983).

Additionally, we note that analysis of merger claims traditionally has revolved around the concept of injury to the sovereign; in order to support the imposition of more than one sentence, it must be found that the defendant's conduct constituted more than one injury to the Commonwealth. *Commonwealth v. Sanders*, 339 Pa.Super. 373, 489 A.2d 207 (1985); *Commonwealth v. Padden*, 335 Pa.Super. 51, 483 A.2d 950 (1984); *cf.* 18 Pa.C.S. § 110(1)(iii)(A) (multiple convictions permitted when same conduct violates different statutory provisions "intended to prevent substantially different harm[s] or evil[s]....").

*Id.*, 344 Pa.Superior Ct. at 251, 496 A.2d at 779–780.

A rational legal base exists in addition to the statute 3502(d) which clearly distinguishes between a felony and lesser crimes for a proper enhancement of sentence for the more serious crime. The legislature clearly intended that where the major crime, burglary, was found to be committed, it was not in the public interest to sentence also on the subsidiary crime; however, when the secondary offense

was of equal seriousness to the primary offense, both justified a sentence.

Appellant has not met this burden by merely alleging the statute in question is irrational. Therefore, counsel cannot be held ineffective for failing to raise the constitutionality of a statute when there has been no showing by appellate counsel that the statute is, in fact, unconstitutional. Trial counsel will not be held ineffective for failing to raise a baseless claim. *See Davis, supra.*

Appellant further asserts that evidence seized from appellant at the time of his arrest was obtained in violation of his right to be free from unreasonable searches and seizures. At the time of appellant's apprehension, the police seized several items of physical evidence including: his clothing, a bottle of "Keri" brand lotion taken from appellant's person, a ski mask taken from the front seat of his car, a cooking mit located in the rear seat of the car and a pair of panties and a handkerchief taken from the hood of a parka being worn by appellant's daughter. Appellant now claims that all items were the fruit of an illegal detention that preceded his arrest and that the panties and handkerchief were the fruit of an illegal search of his daughter. A careful review of the record supports the lower court's conclusion that there was sufficient probable cause to detain and arrest appellant, and thus the search incident to that arrest was proper.

Finally, appellant challenges his sentence as being excessive; first, in exceeding the sentencing guidelines by imposing the maximum punishment allowable by law for the offenses, and second, in light of the imposition of consecutive terms of imprisonment. Appellant was sentenced to eight consecutive terms of imprisonment of 10 to 20 years each for the commission of eight first degree felonies. These sentences, combined with a 1 to 2 year consecutive sentence imposed on a related count, total a minimum of 81 years imprisonment and a maximum of 162 years imprisonment. (Concurrent terms of imprisonment imposed are not

considered in the calculation of the total minimum and maximum sentence.)

Initially, I note that a sentencing court may deviate from the sentencing guidelines if a written statement of its reasons is provided. *Commonwealth v. Chesson,* 353 Pa. Super. 255, 509 A.2d 875 (1986); *Commonwealth v. Mills,* 344 Pa.Super. 200, 496 A.2d 752 (1985); *Commonwealth v. Royer,* 328 Pa.Super. 60, 476 A.2d 453 (1984); 42 Pa.C.S.A. § 9721(b). It is also well established that trial judges are vested with broad discretion in sentencing and appellate courts will interfere only if the sentence exceeds the statutory limits or upon a showing of manifest abuse of discretion. *Commonwealth v. Arent,* 352 Pa.Super. 520, 508 A.2d 596 (1986); *Commonwealth v. White,* 341 Pa.Super. 261, 491 A.2d 252 (1985); *Commonwealth v. Parrish,* 340 Pa.Super. 528, 490 A.2d 905 (1985). A trial judge is required to state his reasons for the sentence reflecting his consideration of the Sentencing Code, the circumstances of the offense and the character of the offender. *White, supra; Commonwealth v. Kane,* 315 Pa.Super. 212, 461 A.2d 1246 (1983); 42 Pa.C.S.A. § 9721. The statement is not required to cite specifically to the Sentencing Code but must demonstrate that the factors in the Code have been considered. *White, supra; Commonwealth v. McCall,* 320 Pa.Super. 473, 467 A.2d 631 (1983); *Kane, supra.*

In exceeding the sentencing guidelines by imposing maximum sentences, the court stated its reason for so doing:

My reasons for doing this are that in each one of these incidents involving the several victims, the Defendant's attitude and plan was so calculated and so callous as to be an absolute and complete disregard for the rights of others. An examination of the facts will show that in one instance, the Defendant even threatened to harm an infant child if the mother of that infant child did not submit to him. Next, the crimes that he committed were particularly heinous, and the results and the trauma thereof particularly long-lasting to the victim.... It is the opinion of the court that if the maximum is to have

any meaning *whatsoever,* that this is a case in which it must be imposed. . . .

(Record 34 A, Reasons for Sentencing Outside the Guidelines, 3/7/85, p. 2).

It is also clear, from a review of the sentencing transcript, that the court was aware of the minimum and aggravated range of the sentencing guidelines for each of the offenses with which appellant was charged. (S.T. 3/7/85, pp. 35–38). The court further considered a presentence investigation report and stated appellant was "mentally disabled, severe, and a danger to himself; and he has mixed disturbances of emotion and conduct." (S.T. 3/7/85, p. 32). Having determined that the court considered the relevant factors when sentencing appellant, I see no need for further recitation of such factors.

Although the court's comments demonstrate that it generally considered the factors relevant to the proper determination of a sentence, I would nonetheless find the court has committed an abuse of discretion in sentencing appellant to consecutive terms of imprisonment for the rape and burglary charges resulting in a net minimum term of 81 years imprisonment. I would find the sentence to be excessive under the circumstances.

In *Commonwealth v. Simpson,* 353 Pa.Super. 474, 510 A.2d 760 (1986), we said:

What we find objectionable is the total length of the minimum sentence. Although none of the individual sentences is excessive, the cumulative sentence is. *See Arent, supra.* A sentence must be imposed based on the minimum amount of confinement that is consistent with the gravity of the offense, the need of the public for protection and the rehabilitative needs of the defendant. *Arent, supra; Parrish, supra; Commonwealth v. Campolei* [284], Pa.Super. [291], 425 A.2d 818 (1981); *Commonwealth v. Martin,* 466 Pa. 118, 351 A.2d 650 (1976), 42 Pa.C.S.A. § 9721(b).

Although we agree with the trial court that the offenses are serious in nature, we do not think the protec-

38

tion of the public and the rehabilitative needs of appellant mandate such a sentence.

.    .    .    .    .

Our specific objection to the sentence is based on the court's imposition of six (in this case nine) consecutive sentences. The same considerations which are involved in imposing a single sentence should also be the basis for determining the appropriateness of consecutive terms of imprisonment rather than concurrent. *Martin, supra.* This would apply equally when sentencing convictions of multiple crimes arising from the same or separate incidents when tried at the same time.

It is clear that the court focused on the nature of the crimes rather than the totality of the requirements mandated by *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977) and the Sentencing Code, 42 Pa.C.S.A. §§ 9722–9725. At § 9725, Total confinement, the Sentencing Code provides:

§ 9725. **Total confinement**

The court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:

(1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;

(2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or

(3) a lesser sentence will depreciate the seriousness of the crime of the defendant.

Unquestionably the court was justified, under this section, to impose a sentence of total confinement, and pursuant to section 9727, consecutive sentences were also permissible. However, in the language of the statute above, in addition to the nature and circumstances of the

crime(s), the court must also consider the history, character and condition of the defendant.

*Id.*, 353 Pa.Superior Ct. at 478–79, 510 A.2d at 762. To impose a minimum sentence of 81 years on appellant is, in effect, an imposition of a life sentence with no conceivable possibility of parole. Eighty-one years of incarceration precludes the possibility of rehabilitation and effectively removes appellant from society for the remainder of his natural life. It is also necessary to weigh the effect of a cumulative minimum sentence of 81 years, which would take a relatively young man through the prime of his life for a term six times as long as the average life sentence under a system which, unlike the federal system or that of other states, does not permit review and parole upon good behavior in substantially less time than the minimum sentence provides. The trial court recognized all of the above, stating: "It's the intention of this Court that you do, in fact, spend the remainder of your life in prison." (S.T. 3/7/85, p. 40). While not in any way diminishing the heinous and depraved nature of appellant's conduct, I think a more appropriate sentence could be structured. Since it is unlikely that for at least the latter fifty years of the sentence the appellant would be a threat to society (he is presently 33 years of age), such a sentence appears to be directed toward retribution and punishment rather than the needs of society; this is despite the fact that the court stated:

The various factors which I consider in addition to these, retribution, no, there isn't a place in our penology for retribution. We don't go an eye for an eye, we try to accomplish something.

(S.T. 3/7/85, p. 40).

In his own words, the court expressed the intent to make an example of the appellant, stating:

Deterrence, yes. This sentence that I am going to impose will deter you from ever doing this again and one can only hope that the message that goes out of this courtroom with respect to deterrence is that anyone else contemplating making such a conscious decision to prey

upon others will think twice about it and decide to seek help rather than to seek gratification at the expense of others.

(S.T. 3/7/85, p. 41).

I would not take seriously the majority's attempt at minimizing the effect of this sentence as being greater than that of a life sentence or that his future is not "as bleak as it would appear." (Majority Memorandum, p. 6). The majority points out that pursuant to 62 P.S. § 1053, 37 Pa. Code § 94.3, appellant could be transferred to a prerelease program after serving one-half his minimum sentence. Assuming appellant should live so long, it is inconceivable that the parole board would consider having a person in prerelease for forty-one and one-half years, and at any rate, appellant would be seventy-three and one-half years old at the time, making it useless as a rehabilitation tool. The second suggestion of the majority, that appellant could request commutation of sentence by the Board of Pardons is equally untenable. The grant of such a request is no more likely than the appellant being given a good conduct medal for his behavior. Research and observation on the role of commutation and pardons on the correctional process shows it to be nil. The following comment illustrates this.

> Except insofar as they may create public interest in particular cases, appeals to the executive for a pardon or commutation of sentence do not greatly affect the criminal-law process nor have they, in the past, represented a very important branch of criminal appeals. Rather, this appeal process is a seldom-used mechanism for either alleviating injustices or, more importantly, for making the criminal law responsive to political considerations at the executive level of government.

Ch. 17, Appeals from Criminal Convictions, p. 674. *Handbook on Criminology* (Daniel Glaser ed. 1974) Rand McNally College Pub. Co., Chicago.

A recent example of this is the political advertisement of the Lieutenant Governor, during the Gubernatorial cam-

paign, that he, as Chairman of the Pardon Board, had commuted no criminal sentences during his eight years in office. Sentencing should not be subject to the vagaries of political or public opinion. The Pardon Board particularly reflects differing philosophies from one administration to another which are unrelated to the thoughtful, analytical and while sometimes inadequate, scientifically oriented concepts of sentencing contained in modern sentencing codes such as the one we are dealing with here.

The court in this case did focus primarily on the nature of the crimes, made a decision that rehabilitation was impossible ("This Court stands by its earlier statement that even with the best system, this defendant could not be rehabilitated." (Slip Op., Nygaard, J., 4/3/85, p. 2)) during defendant's lifetime and made a decision that he would never walk the streets again. In doing so, he turned away from the sentencing guidelines which provide for sentences in the aggravated range in cases precisely such as this where the crimes are heinous, rehabilitation prospects are limited and prior records are extensive. Again, turning to the above statement by the court in his Opinion, the Court also rules out the possibility that within the next 80 years, the psychosocial biological sciences will achieve success in treating violent sexual disorders. Comments on this aspect are fully developed in Chapter 4, Biological and Psychophysiological Factors in Criminality, by Saleem A. Shah and Loren H. Roth, National Institute of Mental Health, in the *Handbook on Criminology, supra,*:

Money (1970) and other workers at Johns Hopkins University are investigating the effectiveness of Provera (a progestational compound with anti-androgen effects) with sexual offenders.

A more recent report by Cooper et al. (1972) describes the results of anti-androgen therapy (using cyproterone acetate) in three cases of hypersexuality accompanied by compulsive and aggressive sexual behavior. One of the cases, for example, involved a 40–year–old man who had made a number of sexual assaults upon his 15–year-old

daughter, and had manifested various other forms of sexually deviant behavior. In all cases there was considerable erotic arousal and compulsive sexual fantasies, along with poorly controlled behavioral manifestations of such urges. Administration of the drug resulted in reductions in erotic fantasies, sexual urges, and related sexual behaviors in all cases. In addition to the sexual inhibitory effects, the drug also had an unmistakable general tranquilizing action. Three weeks after stopping the drug, sexual responsiveness had returned to pretrial levels, along with increases in levels of plasma testosterone. Thus, the effects of the drug are not only quick, but they are readily reversible with no side effects or toxic manifestations noted. Moreover, there were no signs of feminization (an advantage over estrogen), and both clinical and endocrine effects were completely reversible after eight weeks.

Pharmacological treatment in certain cases (e.g., assaultive and violent individuals and those convicted for sexual crimes) has possible advantages where very long penal sentences are typically provided. Similarly, in twenty-eight states there are special laws pertaining to "sexual psychopaths" (and similarly designated sexual and other dangerous offenders) which provide for their *indeterminate* confinement (Brakel & Rock, 1971). .

With further advances in therapeutic methods, appropriate outpatient treatment and handling of such offenders could offer an alternative to long-term confinement in penal and related institutions. Moreover, while the endocrine agents used with sex offenders do not have lasting effects after the drug is discontinued, their treatment could be accompanied with other forms of behavioral therapy designed to bring about better discrimination and control in the expression of sexual urges without running afoul of the law.

We do wish to emphasize, however, that prior to the use of these treatment modalities further research is needed to ascertain the consequences (after- and side effects) of long-term use of such drugs, as well as to

obtain more precise information about their effectiveness based upon carefully controlled experimental studies. Since incarceration, especially for long-term and indeterminate periods, reflects a very stringent and even deleterious form of social control, the possibilities for community-based treatment could offer a socially acceptable, as well as a more humanitarian, approach to the treatment and handling of such offenders. Use of these drugs in legal settings, however, would clearly require very careful monitoring in order to guard against possible misuse of such therapeutic procedures.

*Id.* at 152.

It is clear that the court has substituted his view of the sentencing system and not that imposed by the legislature. The court stated:

Sentencing guidelines, while approved of and followed by this court in 90% of its sentences, do have a serious flaw. It is this: No statistical analysis can ever fully take into account the flesh and blood defendant who is standing before the Court for sentence. Some defendants look worse "on paper" than they really are—some look "better" than they really are. In the instant case, Mr. Divincenzo's guidelines provided for a sentence which was less severe than the Court believed was necessary.

(Slip Op., 4/3/85, p. 2).

In summation, after due consideration to matters properly considered by the court in opting for a harsh sentence, those considerations that went beyond the principle of individualized justice were: 1) deterrence to anyone else contemplating similar crimes; 2) the court's intention that the defendant spend the rest of his life in prison; 3) the court's finding that rehabilitation is impossible; and 4) the court's determination that the guidelines are seriously flawed and are thereby not to be followed.

In so doing, the trial judge went too far in substituting his independent views for the structure imposed by law, designed to create a fair, just and universal (statewide) standard of sentencing. The legislature, by implementing

the guidelines, studied the problem thoroughly and considered uniform sentencing codes and similar guidelines in existence elsewhere. It also involved the judges and penal authorities in the process. It thus provided a system which assures, to a greater degree than ever before in Pennsylvania, that punishment will be graded according to both severity of the crime and potential for rehabilitation, measured to some degree by prior criminal records. It allowed for considerable discretion in the trial judge within sentencing ranges to tailor the sentence to individual situations. It also provided judicial discretion to go outside the guidelines in rare and unusual cases, which, however, must meet a stringent test and establish that the guideline ranges are inadequate to serve the purposes of sentencing. Finally, the guidelines provide for uniformity of sentencing so that defendants throughout the Commonwealth, convicted of identical crimes under similar circumstances, will receive approximately the same sentence and to assure that there is uniform sentencing throughout the state. This is vital in a democracy to assure its citizens that justice is evenhanded and fair, punishment will be consistent and reasonably certain and the individual sentenced will not be subject to vacillating fads and philosophies of penology or politics but be treated in a manner that provides both protection to society and rehabilitation. Also, the correctional system is much better able to manage prisoners who have been sentenced in a manner consistent with other prisoners similarly charged.

It is apparent that with the onset of the sentencing guidelines, our jails have become overloaded so they cannot be said to favor leniency as opposed to more stringent sentences. Unquestionably, some judges would opt for more serious penalties, while others would wish for less. The guidelines appear to have struck a fair and reasonable middle ground. The studies conducted by the Sentencing Commission establish that they are working well and fulfilling the legislative objective. As we become more confident of their fairness and appropriateness, we should also be less willing to permit them to be ignored. We do not hesitate to

remand for resentencing when the sentence is outside the guidelines, when too lenient, *Commonwealth v. Drumgoole,* 341 Pa.Super. 468, 491 A.2d 1352 (1985), and we are now paying equal attention to those sentences which go outside the guidelines in the direction of unreasonable harshness.

As in *Drumgoole,* where the court held that the lower court is not permitted to "factor in" considerations in mitigation already factored into the guidelines, to avoid imposing any sentence, so should we hold that considerations already built into the aggravated guideline range may not be considered a second time to go beyond the guidelines in imposing a sentence of incarceration more severe than indicated. Widespread excessive sentences can backfire and lead to increasing overcrowding of prisons resulting in legislation or federal court orders empowering prison officials to release prisoners after short periods thus effectively nullifying the vaunted discretion in the trial court to determine length of incarceration. This is no idle consideration as the prisons of 34 states are now under federal court order and the power to release is now in the hands of prison officials in those states.

To illustrate by comparison this sentence with all other sentences for either burglary or rape, monitored by the Pennsylvania Commission on Sentencing in 1985, the following is informative:

### SENTENCES FOR FORCIBLE RAPE—1985
#### Number reported totalled 273

| | No. | (%) | Average Sentence | | Years |
|---|---|---|---|---|---|
| Probation | 18 | (7%) | 68.2 mos. | | 5.7 |

| | No. | (%) | Average | | Years |
|---|---|---|---|---|---|
| | | | Minimum | Maximum | |
| County Time | 37 | (14%) | 17.2 mos. | 40.9 mos. | 1.4 – 3.3 |

| | No. | (%) | Average | | Years |
|---|---|---|---|---|---|
| | | | Minimum | Maximum | |
| State Time | 217 | (79%) | 63.8 mos. | 143.1 mos. | 5.3 – 11.9 |

The overall average sentence for rape was 56.9 to 128.2 months (4–3/4 to 10–2/3 years).

A single reported rape sentence exceeded these ranges (conceivably the sentence under review here)

Since most of the sentences imposed in this case were on the burglary charges underlying the rape charges, a similar analysis of reported burglary sentences is in order.

SENTENCES FOR BURGLARIES—1985
No. reported (O.G.S.–7) totalled 356

|  | No. (%) | Average Sentence | | Years |
|---|---|---|---|---|
| Probation | 49 (14%) | 47.6 mos. | | 3.96 |

|  | No. (%) | Average | | Years |
|---|---|---|---|---|
|  |  | Minimum | Maximum | |
| County Time | 130 (37%) | 8.6 mos. | 24.8 mos. | .75 – 2 |

|  | No. (%) | Average | | Years |
|---|---|---|---|---|
|  |  | Minimum | Maximum | |
| State Time | 172 (48%) | 35.8 mos. | 81.9 mos. | 2.9 – 6.8 |

Thus taking the *longest* average sentence for those rapes reported (5.3 years min.—11.9 years max.) and aggregating eight consecutive terms based on that average, we derive a sentence of 42.4 years minimum and 95.2 years maximum. This compares with the present sentence of 80 years to 160 years.

Applying the averages given for burglaries since the appellant was sentenced in most of the cases on burglary charges underlying the rape, taking the longest average sentence for burglary (2.9 minimum to 6.8 maximum), the total sentence on eight consecutive charges would be 23.2 to 54.4 years, again compared to 80 to 160 years.

The needs of society could just as well be met, with less cost to the taxpayers and without complete disregard for appellant, by a sentence which combines total incarceration with long periods of parole and/or probation. A significant period of incarceration is still in order, however, I would find a minimum of 81 years imprisonment to be excessive. The guidelines provide for an aggravated range of sentences when justified and would more than adequately meet the sentencing needs here. The guidelines were intended to

establish fair and consistent sentences throughout the Commonwealth and to eliminate disparity in sentencing. When they are ignored, even with the reasons stated here by the trial judge, and maximum sentences are imposed in each case assuring no possibility of parole before death, I believe the legislative intent has been ignored and discretion has been abused. If this was the legislative intent, the legislature could have provided for mandatory life sentences in multiple rape cases. The trial judge's statement that he intended that the appellant spend the rest of his life in prison indicates he imposed a life sentence without possibility of parole, a sentence which the legislature never intended. In this case, the sentence imposed is 54 years over the maximum of the aggravated range permissible under the guidelines.

In comparison, Jerry Whitworth, convicted of selling vast amounts of classified Navy coding material and cryptographic key lists to the Soviet Union through the John A. Walker spy ring, received a sentence totalling 365 years, *which would make him eligible for parole in 60 years.* His treason allowed the Kremlin to decode one million United States navy messages between 1974 and 1983 and was "the most important operation in KGB history" and "would have been devastating to the United States in the event of war." (UPI, Sanfrancisco, July 24, 1986). Obviously those crimes and the present are noncomparables, but it illustrates the fact that even with the most heinous crimes (nothing is more heinous than jeopardizing the nation and every man, woman and child in it), our system provides a limitation on punishment. Eligibility for parole in 60 years for Jerry Whitworth is a slap on the wrist compared to 81 years before parole consideration is given to the appellant.

I would vacate the judgments of sentence imposed on the final indecent assault, various burglary, rape and attempt convictions and remand for resentencing.