557 A.2d 751

COMMONWEALTH of Pennsylvania

v.

Sharmon SIMPSON, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 31, 1988.

Filed April 17, 1989.

Sharmon Simpson, in propria persona.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com., appellee.

Before TAMILIA, HOFFMAN and CERCONE, JJ.

TAMILIA, Judge:

On October 1, 1987, appellant was sentenced to a total of 25 to 50 years imprisonment and 10 consecutive years of probation for convictions, in three separate trials, of 30 offenses arising out of 12 separate armed robberies committed by appellant between December 2, 1981 and May 2, 1982.

Resentencing on the first series of convictions, the Silo robberies, followed remand by our Court in *Commonwealth v. Simpson,* 353 Pa.Super. 474, 510 A.2d 760 (1986) (Simpson I). The sentencings for the trials and resulting convictions which followed Simpson I were consolidated with the Simpson I sentencing remand and the following total terms of imprisonment were imposed:

*Simpson I,* March 15, 1983 convictions (Silo robberies)— ten to twenty years imprisonment and five years probation;

June 23, 1983 convictions (Brady robberies)—five to ten years imprisonment and five years probation (concurrent with other probationary terms);

October 12, 1983 convictions (Gino robberies)—ten to twenty years imprisonment and five years probation.

Each of the three appeals currently before us turns on its own record and facts as presented to the Court.

The record at Simpson I suggested circumstances which are totally inapplicable to the consolidated appeals now before us at Simpson II. The record for Simpson I did not substantiate the sentence of 30 to 60 years on the series of robberies considered therein, the full court denying reargument on June 30, 1986 with the Supreme Court denying allocatur petitions filed by both appellant and the Commonwealth. *Commonwealth v. Simpson,* 514 Pa. 624, 522 A.2d 49 and 514 Pa. 635, 522 A.2d 1105 (1987).

Simpson II, encompassing Simpson I, includes appeals of sentences resulting from convictions at *three* trials for multiple armed robberies and related offenses over a long

period of time, providing in its totality a significantly different frame of reference for sentencing than did Simpson I.

The sentencing judge and Commonwealth here had a stronger basis for looking to a longer total sentence than was the case in Simpson I and the justification and legality of the sentence of 25 to 50 years for the entire series of crimes at the completion of the trials on all of the charges involving these pattern crimes was within the sound discretion of the trial court. Indeed the Simpson portrayed by the court and Commonwealth at sentencing in Simpson I was a far more benign person than portrayed in Simpson II. Simpson I served its purpose in alerting the Commonwealth and the trial judge that the defendant was not to be sentenced unfairly. By so alerting them to this perception, the total sentence of 25 to 50 years was imposed, which is within the range of fair and reasonable sentencing. Reviewing the Commonwealth's letter brief and the trial judge's Opinion of April 28, 1988, reinforced by her second Opinion of November 16, 1988, appellant's contention, that the remand sentence on Simpson I and the sentence on the other convictions were required to be concurrent, is not justified. The remand on Simpson I applied to that record only and cannot be construed to apply to other sentences on other trials and convictions.

In sentencing appellant, while Judge Abraham stated she rejected "out of hand" the "suggestion" of a sentence by the Superior Court, contrary to appellant's allegation that she ignored the mandate of the Superior Court, she did in fact impose a total sentence involving the remanded cases *and* the other cases well within the discretionary limits suggested by this Court. Appellant is in error when he suggests the Superior Court mandated a 10 to twenty year sentence for *all* of the robberies involved in the three trials. The only robberies before this Court in Simpson I were the six Silo robberies and related offenses encompassed in the first trial. The objection voiced by this Court was to six consecutive sentences on the robberies when the record at that time did not establish the depth of appellant's criminal

involvement and background. The record in Simpson II does establish that criminal propensity and background and the sentencing on each of the three sets of convictions was well within the discretion of the trial judge. Since appellant relies entirely on the "directions" imposed by Simpson I, which we do not find applicable here, and no other issues have been raised on appeal, we affirm all judgments of sentence.

We are, however, constrained to comment on the unorthodox, unprecedented and objectionable attack by the trial judge against this Court in particular and the appellate system as a whole expressed in her Opinion of November 16, 1988.[1] Since it is possible the Opinion will be published, the misrepresentations and blanket denouncements concerning this Court, which has received commendations for its decisions and efficiency from national commentators on state courts, cannot go unanswered.

Upon remand the trial court considered evidence of the defendant's criminal past, of which this Court did not have the benefit when we sent the case back with the suggestion on sentencing. It was after the trial court judge heard new evidence of the defendant's past serious crimes that she took the occasion to demonstrate an unbridled and intemperate view of the appellate process.

In her comments regarding our remand Order, she demonstrates a grievously erroneous impression of the judicial system vis-a-vis the relationship between the trial and appellate courts. It can only be assumed from the trial judge's "loose canon" approach that the judge evinces a pitiable lack of knowledge or a personal asperity with the review powers of our Court. Her remarks are shabby and unworthy of a judge in our system and the sooner the judge disabuses herself of her misconception of the appellate court function, the less she will be found piling Pelion on Ossa. A saying that is frequently repeated in judicial circles is that judges should be able to disagree without

---

**1.** All further references to Judge Abraham's Slip Opinion refer to the Opinion of November 16, 1988.

being disagreeable. Judge Abraham appears not to subscribe to this approach and, beyond disagreeing, would castigate the judges and functions of appellate review.

The first error of Judge Abraham was in finding the panel decision, in Simpson I (this writer being the author of that Opinion) was a two-to-one majority. This is incorrect; the panel vote for vacation of sentence and remand for resentencing was unanimous. *See Simpson, supra.*

Judge Abraham takes issue with what she determines to be conclusions of the panel in Simpson I as follows: "(1) that if one cannot predict future dangerousness then we must rely on the past; and (2) an individual has to be given a second or even more chances by the courts to become a productive member of society." (Slip Op., Abraham, J., 11/16/88, p. 5.)

She is in error in concluding the first concept would prevent consideration of the many criminal episodes over a substantial period of time during defendant's past. The summarization, taken out of context, precisely focuses in on a defendant's prior history, good or bad, and reflects in sentencing mitigation or severity. The error of Judge Abraham's analysis is that she now, in Simpson II, presents a defendant with a long standing violent past, when the only record available to this Court in Simpson I portrayed him with no criminal past and as reasonably educated and family-oriented former member of the armed forces with a prior good record. It is not our view of the appropriate standards in sentencing, but the trial court's failure to adequately justify the sentence which is at fault. It is totally unacceptable for a trial judge, after a case has passed through the process of appellate review, to attempt to redeem the error pinpointed by the appellate court, by reconstructing the case in a later sentencing proceeding concerning other convictions and by filing a revisionist Opinion after the appellate record is closed. Pages 5 through 7 of Judge Abraham's Opinion contain information concerning the defendant's prior criminal history, which was never presented in the sentencing record of Simpson I.

By failing to provide that background for appellate review, and with statements from the trial court that appellant's background provides no "clue" as to why he strayed from the fold and the assistant district attorney pointing out there was nothing in appellant's background which shed light on the outrageous quantities of the acts (S.T. 8/20/84, pp. 14, 17–18), our review disclosed only the number and severity of the crimes as a basis upon which the trial court had imposed sentence.

As to the second error attributed to the panel, Judge Abraham comments that the appellate courts should never require the trial judges to provide "violent felons unlimited chances to become productive citizens, [and] our beleaguered communities should never be asked by our appellate court jurists to tolerate the repeated tyranny of the armed felon on the theory that this is somehow beneficial to the criminal." (Slip Op. at 7.) This statement is conclusionary and as with the first ignores totally the context from which it was drawn; the two statements and their analysis by the trial court is a perversion of what this Court stated in Simpson I. There we made a careful explanation and analysis of the rules governing the trial judge and the considerations which must be weighed in determining whether or not confinement is in order and for how long.

Taking the sentencing transcript to this point, as a whole, without question total confinement was justified. However, in the words of the sentencing judge, all alternatives were considered and rejected without further consideration. It was also necessary to weigh the effect of a cumulative minimum sentence of thirty years, which would take a relatively young man through the prime of his life for a term twice as long as the average life sentence, under a system which unlike the federal system or that of other states, does not permit review and parole upon good behavior in substantially less time than the minimum sentence provides. The weighing, in which the trial court must engage, is a balancing of the defendant's entire prior life against the crime spree of less than six

months for which he was convicted. Simply reciting that the alternatives were considered and rejected ignores the task of weighing those factors when it is apparent that they must be considered. As the trial court aptly pointed out, she is unable to predict the future, therefore, to the extent that we must make a judgment as to future behavior, we cannot ignore and must be guided by the past. Unquestionably, the safest approach for society, and the only way to protect against recidivism, is a virtual life sentence for any offender. This is an unacceptable price to pay to protect society and our sentencing structure must be such that where warranted, an individual has a second or even more chances to become a productive member of society. It is well documented that crime, particularly violent crime, is committed by the young, particularly those males between 18 and 30 years of age. Thereafter because of many operative factors, there is a steady decrease in criminal activity. This case is one where the benefits of a good prior history and the effects of aging on criminal involvement make the appellant a reasonable candidate for a sentence which will punish him, serve the needs of society for protection and make note of the serious nature of the acts, but also permit the appellant, in a reasonable period of time, to return to society and, if need be, under long-term parole supervision, pick up a meaningful and productive life.

To impose a minimum sentence of thirty years discounts the possibility of rehabilitation and effectively removes appellant from society for his potential working life, precluding the possibility of his ever becoming a contributing member of society.

*Simpson* 353 Pa.Super. at 481, 510 A.2d at 763–764.

The harsh statements condemning appellate judges for favoring criminals is an unwarranted attack against the appellate judges of this Commonwealth and reeks of an irresponsible play on the fears of the community which equates maximum sentencing of all convicted criminals to protection of society. It ignores the rules of law, the

mandates of legislation, judicial fairness and proper utilization of limited correctional resources. The judicial decisions and the sentencing guidelines provide clear and reasonable parameters for sentencing and it can be said without fear of contradiction that in excess of 90 per cent of trial court sentences are affirmed on appeal. *This Court more frequently reverses and remands for resentencing when sentences are too lenient and below the sentencing guidelines than when a sentence goes beyond the aggravated range of the guidelines.* The system tolerates wide discretion in sentencing but it should not and will not tolerate sentences which do not reflect minimal restraints on discretion. Without appellate review and governance, such sentencing becomes would result in rule by the individual and not the rule of law. Contrary to Judge Abraham's assertion and much of the unfounded rhetoric about softness on the part of the judiciary, the facts prove otherwise. There has been a 107 per cent increase in prisoners while the crime rate has increased only 20 per cent. We now have 1,000,000 prisoners in this country when as little as ten years ago there were less than one-half million. Thirty-seven states are under court order for overcrowded prisons and the discretion for the length of a sentence has passed from the sentencing judge to correction officials. Fortunately, in Pennsylvania, sentences by trial judges reflect true sentences, but with a rapidly overloaded system, the reluctance of the legislature to appropriate sufficient money to build new cells at a cost of $25,000 per cell, and the cost of $25,000 per year to maintain one prisoner, the Pennsylvania legislature has under consideration legislation similar to that of most states—that is to permit correctional officials to release prisoners at their discretion. In some cases, in many other states, violent prisoners *cannot* get into jail until an opening occurs by reason of a release of another violent prisoner who has served less than one-third of his sentence. Barry Krisberg of the National Council of Crime and Delinquency has stated that prisons must be regarded as a national resource as we are running out of money to build them and people will not tolerate them in their com-

munities. New York is placing prisoners on barges out on the water to deal with overcrowding and community rejection. It has frequently been said that the only foolproof answer to recidivism is a life sentence without possibility of parole for every person convicted of a crime. This, however, does not prevent other persons from committing crimes and very few people would not reject such a theory as cruel, useless and terribly wasteful of limited public resources. If imposition of maximum and consecutive sentences was practiced by all judges, it would only add to our prison crisis, be self-defeating and result in many more people in jail who eventually must be released through legislative action in turnstile fashion on aborted sentences because of judicial arbitrariness. If the judge does not see himself (herself) as a part of the total system of law enforcement and corrections, he or she will become part of the problem either due to excessive leniency or excessive harshness. The Commission on Sentencing has published statistics indicating 89.1 per cent of all sentences were within the guidelines and only 8.7 per cent were less severe, and 2.2 per cent were more severe.[2] This indicates the legislature and the courts have come to a balanced approach to sentencing, which is fair, protects society, makes for consistent sentencing across the state and gives the best value for the money spent. Going beyond the guidelines, ignoring responsibility to the system and exercising unbridled discretion must be viewed seriously and is not to be tolerated by the appellate courts.

When Judge Abraham "reject[ed] . . . any notion of the panel that the Superior Court has the authority either to remand or amend the sentence directly or to recommend to trial judges what sentence it deems to be appropriate . . . [as] an impermissible intrusion upon the power of sentencing which has been vested exclusively in our trial judges by the Pennsylvania Legislature[, or] [a]ny intrusion attempted or accomplished by any other body, in the name of curing

2. Sentencing in Pennsylvania, The 1987–1988 Annual Report of the Pennsylvania Commission on Sentencing, p. 19.

"sentencing disparity" or "a manifestly illegal or excessive" sentence, [because it] is repugnant to and in derogation of our exclusive mandate" (Slip Op. at 7–8), in one fell swoop, she declared herself not subject either to appellate review or the legislative mandate of the Sentencing Code and the Sentencing Guidelines. In her analysis, Judge Abraham details the authority which permits the Superior Court to exercise appellate review, but then rejects this authority out of hand. While the authority exists and is proclaimed by statute and case law, *nowhere can there be found any authority by which a trial judge can deny his/her constitutional mandate to be bound by statutory or appellate law in making his/her decision just because it is repugnant to him/her.*

Judge Abraham again errs when she attributes to this Court in Simpson I the resentencing of Simpson. It is clearly permissible for the Superior Court, after finding a sentence to be excessive or harsh, to give guidance to the trial judge as to what a reasonable sentence would be in light of its experience in review of hundreds, if not thousands, of sentences from every judicial district in the state. This is not a mandated sentence. However, when the specific sentence is required by law, which is not the case here, a mandated sentence could be appropriate. The Order in Simpson I was to vacate the sentence and remand for resentencing in conformity with our Opinion. Obviously, the trial court should know the reasoning of the panel and what the magnitude of error was perceived to be, otherwise nothing would prevent the trial judge from entering the identical Order without appropriate justification. It is ludicrous for a trial judge to hold, with any hope of credibility, that the appellate courts cannot express a view as to what would be an appropriate sentence on remand.

As to the final attack by Judge Abraham against the concept of appellate review, she berates the panel system as being "nothing more or less than Superior Court Roulette" (Slip Op. at 13) in which the subjective views of the panel members are substituted for consistency in sentencing.

Admittedly, 20 judges (15 commissioned and 5 senior) sitting in 105 panels in an average year and disposing of 4,000 to 6,000 appeals on issues, which in many cases will be similar, can be at times inconsistent. However, Judge Abraham's attack against the Superior Court must also comprehend the public, who provide the constitutional basis for panel disposition, the legislation, which created the Sentencing Code and guidelines and the Supreme Court, which ultimately supervises the system. On balance, her concern is misplaced and her criticism unfounded. The panel system is the best that can be provided under present conditions and it has worked extremely well as an efficient and fair method of disposing of an incredible volume of appeals. The alternative would be to have the appellate process choked with appeals requiring four or five years for a decision instead of the present remarkable average of six to eight months. Also, the en banc system of reargument and the petition for allocatur to the Supreme Court provide an expeditious means of correcting conflicts in Opinions of Superior Court panels. This criticism by Judge Abraham is a red herring as nothing in the cases before us at this time involves a conflict with any other panel decision by the Superior Court. As noted above, reargument was denied by the full Court on Simpson I, as was allocatur by the Supreme Court as to both the Commonwealth and the appellant.

With the broad discretion accorded trial judges, the Sentencing Code and the Sentencing Guidelines to guide them, trial judges who diligently conduct their sentencing procedures are very unlikely to be reversed by this Court. Only the most exceptional cases are subject to reversal. Nothing in the dissent in *Commonwealth v. Divincenzo*, 362 Pa.Super. 27, 523 A.2d 758 (1987), or the holdings in *Commonwealth v. Simpson*, 353 Pa.Super. 474, 510 A.2d 760 (1986), and *Commonwealth v. Parrish*, 340 Pa.Super. 528, 490 A.2d 905 (1985), which Judge Abraham rails against, are contrary to the Constitution, the law or the Sentencing Code, but simply attempt to state the parameters binding both trial and appellate judges in one of the most difficult

tasks facing the courts, that is, the sentencing of another human being. It is also of interest to note that while Judge Abraham castigates this writer for his analysis and application of the law in *Divincenzo, supra, Simpson, supra,* and *Parrish, supra,* she speaks with hope and favor for the relief forthcoming from *Commonwealth v. Devers,* 519 Pa. 88, 546 A.2d 12 (1988). Judge Abraham failed to take note that in reversing the Superior Court, the Supreme Court noted the Superior Court judge who dissented in *Devers* was this writer (*see Devers* at n. 7), and it was the position put forth by this author which was affirmed by the Supreme Court.

In *Devers,* the Supreme Court rejects the requirement emanating from *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977), as interpreted by subsequent Superior Court decisions, that a detailed and highly technical statement is required when it appears on the record the court has been fully informed by the presentence report which would support the sentence. In his dissent to the unpublished Superior Court *Devers* Memorandum, this writer stated:

I respectfully but strongly dissent. The majority's position in this matter cannot be supported by any sound rationale of sentencing philosophy or precepts of law. Appellant makes two claims: that the sentencing judge failed to articulate his reason for the (15 to 30 year) sentence imposed, and that the sentence is excessive. They are actually one complaint—that the trial court did not demonstrate to appellant's satisfaction why, in view of appellant's good behavior prior to the killing and since his confinement, he should have been imprisoned.[1]

The majority's finding that insufficient reason was given for the sentence, viz., total confinement, is not only rendered de minimus given the sheer brutality of the crime,[2] but is quite simply belied by the record. *See Commonwealth v. Curry,* 318 Pa.Super. 490, 465 A.2d 660 (1983). *Commonwealth v. Green,* [494] Pa.Super. [406], 431 A.2d 918 (1981). The trial judge was very

obviously aware of what appellant terms "mitigating circumstances," e.g. his background and prior irreproachable behavior, and notes that these factors make the violence of the murder so much more perplexing.

*Riggins* statements have as their purpose to facilitate appellate review. *Commonwealth v. Mueller*, 274 Pa.Super. [397], 418 A.2d 465 (1980). We find the statement here quite adequate for this or any other use.

. . . .

Here, where a life was taken in a grisly and vicious manner for purposes of concealing a robbery, the nature of the crime becomes paramount, and other sentencing factors, subsidiary. The Sentencing Code provides:

42 Pa.C.S.A. § 9725. Total confinement

The court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:

. . . .

(3) *a lesser sentence will depreciate the seriousness of the crime of the defendant.*

While no case to our knowledge has said that the seriousness of the crime or brutality of its commission alone, without consideration of a presentence report and other factors delineated in the sentencing code, would permit imposition of a sentence of total confinement, we are likewise of the view that running down the check list of sentencing provisions is not required when it appears from the record that the court was fully aware of the relevant factors and considerations. *Commonwealth v. Rooney*, [296] Pa.Super. [288], 442 A.2d 773 (1982); *Commonwealth v. Walton*, [289] Pa.Super. [411], 433 A.2d 517 (1981). It would appear here, that the court was aware and considered the relevant factors, having available to him a presentence report and discussion of the

alternatives proposed by defense counsel. We can see nothing in the record that would have permitted the trial court to enter a sentence less than total confinement for a reasonably long period of time to meet the mandate of 42 Pa.C.S.A. § 9725(3) "a lesser sentence will depreciate the seriousness of the crime."

. . . .

The very lurid circumstances of the crime alone could justify a maximum sentence regardless of appellant's past. His drug addiction, while tragic, is only an explanation, not an excuse. The sentence is not excessive, and to remand to require the trial judge to state more explicitly that a horrendous crime requires a heavy sentence would be redundant and wasteful of judicial resources. *Green, supra.* I would affirm.

1. From his argument that he performed a public service in eliminating a drug dealer from the gene pool, we gather that appellant expected a testimonial.

2. The majority neglects to mention that the victim was bludgeoned, stabbed and finally strangled, having apparently been pursued all over the house, and losing copious amounts of blood in the process. Appellant then ransacked the dwelling for drugs and money causing even more damage.

*Commonwealth v. Devers*, Dissenting Memorandum, Tamilia, J., filed 11/29/85 (emphasis in original) [352 Pa.Super. 611, 505 A.2d 1030 (table)].[3]

Judge Abraham places great reliance on the Supreme Court decision in *Devers*, the reasoning of which, ironically, was assisted by this writer's dissent to the Superior Court majority in *Devers*.

In writing that the Supreme Court in *Devers* sub silentio overruled *Simpson* in which she was reversed, Judge Abraham ignores the obvious. The Supreme Court had before it *Simpson*, but denied allocatur. *Devers* does not reject the concept that appellate courts have the right and duty to

3. It is not inappropriate for this Court to cite from a Memorandum when the Supreme Court has specifically ruled on the question in *that* Memorandum either by a per curiam Order or by Opinion. *Commonwealth v. Gretz*, 520 Pa. 324, 554 A.2d 19 (1989).

reverse excessive sentences based on the mere fact of the crime.

The philosophy of indeterminate or individualized sentencing was explicitly recognized by the Pennsylvania Legislature early in this century. Courts are not permitted to mete out punishment based on the mere fact of the crime. On the contrary, sentencing must result both from a consideration of the nature and circumstances of the crime as well as the character of the defendant. The sentencer has broad discretion to choose a penalty from sentencing alternatives and the range of permissible confinements, provided the choices are consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. Discretionary sentencing, in sum, means that a defendant cannot be punished on the basis of the crime alone. (Footnote eliminated).

*Devers* 519 Pa. at 91–92, 546 A.2d at 13.

From the record before us in Simpson I, we could not determine that the knowledge of the judge from the testimony, the presentence report or anything else on the record could justify the sentence. The Opinion and record in the instant appeals adequately supports the given sentences. There is, in combination with the resentencing on Simpson I, sufficient rationale, pursuant to the holding in *Devers*, for imposing the heavy, albeit legal, sentence. As such, we have no quarrel with it. *Devers* requires justification beyond the crime alone, which justification can come from the testimony or a well-prepared presentence report. It may not be justified by a mere boilerplate recitation of all the elements required to be considered, in effect saying "I have considered a, b, c, d, e, etc., and rejected a, b, c, d, e, etc.", as done by Judge Abraham in Simpson I.

Sentencing is as much art as law; a boilerplate approach may not be used when thoughtful analysis and explanation is required.

Judgment of sentence affirmed.

HOFFMAN, J., concurs in the result.