459 A.2d 1267

**COMMONWEALTH of Pennsylvania**

v.

**Charles Allen DAVIS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 11, 1982.

Filed April 22, 1983.

356

Claudia Creo Sharon, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before HESTER, BECK and VAN der VOORT, JJ.

BECK, Judge:

Appellant, Charles Allen Davis, was convicted of robbery by a judge sitting non-jury. He filed timely post-trial motions and was sentenced to a period of incarceration of from two to six years.

Appellant's first claim is that the lower court erred in finding that the Commonwealth had proven beyond a reasonable doubt that appellant was guilty of robbery. The test for evaluating that claim was recently reiterated by our Supreme Court in *Commonwealth v. Lovette*, 498 Pa. 665, 669, 450 A.2d 975, 977 (1982) (collecting cases): "[W]hether accepting as true all of the evidence reviewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt." We proceed to review the evidence in that light.

Thomas Edward Martin was working the 12:00 a.m. to 8:00 a.m. shift on March 9, 1977 at one of the William Penn Pipe Shops in Pittsburgh. At approximately 3:00 a.m., a young black man approached the window of that shop through which business was transacted and requested a grape soda. That window is approximately 30 inches above ground level. Martin went to the rear of the shop to find the soda and upon turning to bring that item to the customer, he observed a second man entering through the window and moving toward the cash register. That second man told Martin to "get back" and he removed the money from the cash register. He then asked Martin where the rest of the money was located, to which Martin replied there was no more money in the shop. The perpetrator then opened a

drawer which contained a cigar box, and Martin told him that box contained some money from that evening's sales. The perpetrator removed the money and fled through the door which was locked to those on the outside. The entire episode lasted approximately twenty seconds during which time the victim had an opportunity to view clearly the perpetrator's face in a well-lit shop. In answer to a question on direct examination, Martin stated that he did not attempt to thwart the perpetrator because of his concern for his safety. He stated: "It is my generally developed policy when I am being robbed to let them take all the cash, rather than subject myself to possible injury." Notes of Testimony ("N.T.") 6/11/79 at 22. Martin testified that he had been robbed previously.

John Joyce, an employee of Bell of Pennsylvania who was working the 12:00 a.m. to 8:00 a.m. shift across the street from the William Penn Pipe Shop, testified that at approximately 3:00 a.m. he observed two men get out of a Volkswagen and approach the pipe shop. He saw one of them beginning to enter through the window opening. That man's feet were off the ground. Joyce described the car as a dark blue Volkswagen beetle missing a headlight. He called the police and supplied this information.

William L. Stoehr, also of Bell Telephone, testified to substantially the same facts, although he testified that he observed one of them actually enter through the window opening.

Based upon information provided by Mr. Joyce and by the victim, descriptions of the two men and the automobile were broadcast over police radio. The descriptions of the perpetrators were of a tall, thin, brown-skinned black man and a shorter, medium built, darker black man. The car was described as a dark blue or black Volkswagen missing one headlight.

Officer McIntyre of the Pittsburgh Police Department and his partner observed a Volkswagen with only one headlight. Because it matched the description they had heard previously on their radio, they drove through a red

light and attempted to stop the automobile. There was no other traffic in the area at that early hour in the morning. The Volkswagen sped off, rounded a corner and the officers lost sight of it. Shortly thereafter, they observed the vehicle parked with skid marks leading up to it.

Pittsburgh Police Officer Williams and his partner heard over their radio that a Volkswagen fitting the description of the one previously described had been spotted and was being pursued. They next heard a broadcast that the vehicle had been located on Kelly Street, and they drove to the scene where they found the car. They observed the skid marks and determined that the engine was still warm. The other two officers were searching the house in front of which the car was parked when appellant emerged from a side street. When asked from where he came, appellant replied that he had been visiting a friend. He further questioned the officers as to why they were looking at his car. Appellant would not provide a location of his friend's residence, and Officer Williams noted that all the homes in that area were vacant. The officers transported to the pipe shop for identification both appellant and another man who was walking alone in the area and who fit the general description of the shorter, darker individual. Mr. Martin, whom Officer McIntyre characterized as appearing frightened, failed to identify these men as the perpetrators. This occurred fifteen to twenty minutes after the robbery. Martin testified on cross-examination: "If I wouldn't have been frustrated, flustered at the time, I feel that I would have identified him. It was within my capability to have identified him then, but I did not." N.T. 6/11/79 at 45. And on redirect, he further testified: "At the time that the police brought the Defendant into the store at approximately 3:20 a.m., had I not been flustered or distraught more or less, I could have identified the Defendant, but as I was in that state, more or less, I could not make an identification[.]" Id. at 48.

One week after the robbery, Detective James Utz in conducting the investigation of that robbery interviewed

Mr. Martin who supplied a description of the perpetrator. That same evening, Detective Utz "looked in [his] rear-view mirror and, upon seeing the driver, immediately knew who he was." *Id.* at 97. After appellant [the driver] parked his black Volkswagen, the detective arrested him. The victim subsequently identified appellant three times as the man who took the money. He positively identified him at a lineup, preliminary hearing and at trial.

■ The central prong of appellant's attack on the sufficiency of the evidence is premised upon the fact that at the initial confrontation, the victim was unable to identify appellant as the man who robbed him. While that is, of course, true, the independent basis for the subsequent identifications was fully covered at trial and the trial court found that the victim's initial hesitancy to identify appellant as the perpetrator was based upon his nervous state. There was ample basis in the record to demonstrate that the victim picked out appellant at the subsequent lineup, preliminary hearing and trial based upon an independent recollection of his observation during the time of the robbery under good conditions, i.e. in a well-lit shop at very close range observing the intruder's face as well as his stature.

That argument of suggestiveness clearly was presented to the trial judge who as the trier of fact was entitled to weigh the victim's testimony and conclude that his subsequent positive identifications were reliable.

■ Were this a jury trial, it would have been incumbent upon the judge to provide upon request the jury with a [*Commonwealth v.*] *Kloiber* [378 Pa. 412, 106 A.2d 820 (1954), *cert. denied,* 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954)] cautionary instruction because of the victim's prior failure to identify the robber. *See, e.g., Commonwealth v. McKnight,* 307 Pa.Super. 213, 453 A.2d 1 (1982) (collecting cases). As this Court stated in *Commonwealth v. Whitman,* 252 Pa.Super. 66, 76, 380 A.2d 1284, 1289 (1977):

> The weight to be given to identification testimony is for the trier of fact. *Commonwealth v. Donald,* 227 Pa.Su-

per. 407, 323 A.2d 67 (1974). Anderson offered an explanation for the discrepancies in his identifications, which was also for the jury's evaluation. Such a discrepancy may affect the witness's credibility. Clearly, however, it does not affect the admissibility of testimony and does not require an instruction that the jury disbelieve the witness.

The trial judge in this case was the trier of fact and as such, it was his duty to evaluate credibility of the witnesses and the weight their testimony was to be given. *E.g., Commonwealth v. Haines,* 296 Pa.Super. 257, 442 A.2d 757 (1982).

■ Appellant raises correlatively prior counsel's ineffectiveness in failing to file a suppression motion. Our Supreme Court in *Commonwealth v. Rashed,* 496 Pa. 26, 436 A.2d 134 (1981) recently addressed the claim that a prior inability to identify in a line-up coupled with an opportunity to observe the perpetrator at a hearing impermissibly tainted an in-court identification and that counsel therefore was ineffective for failing to move to suppress that identification. The *Rashed* Court rejected that ineffectiveness claim:

He argues that since [eyewitness] Cusack had failed to identify him at the line-up conducted prior to the preliminary hearing, Cusack's subsequent in-court identification of appellant was impermissibly tainted by his alleged observation of appellant at the hearing. Thus, appellant argues, his counsel was ineffective for failing to attempt to suppress Cusack's testimony on this basis. This Court has already held, in response to appellant's challenge on direct appeal, that Cusack's inability to identify appellant at the lineup did not affect the admissibility of Cusack's in-court identification testimony but only its weight and credibility. [*Commonwealth v. Davis* ] 466 Pa. [102] at 113, 351 A.2d [642] at 647. The independent basis of Cusack's identification of appellant was elicited in detail by the Commonwealth and subjected to rigorous cross-examination at both of appellant's trials. In the face of this demonstrated independent basis, a motion to suppress the

identification testimony of Cusack would have succeeded only upon a showing that the alleged sighting of appellant by Cusack "was so impermissibly suggestive .as to give rise to a very substantial likelihood of misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Here, appellant's unsupported allegation, even if true, does not seriously undermine the reliability of Cusack's in-court identification. Because the trial court would have properly denied a motion to suppress Cusack's testimony, see *Commonwealth v. Smith*, 262 Pa.Super. 258, 39[6] A.2d 744 (1978), appellant's claim that his counsel was ineffective for failing to pursue this issue must be rejected. As we have often stated, counsel will not be held ineffective for failing to perform a futile act. *Commonwealth v. Rice*, 456 Pa. 90, 318 A.2d 705 (1974).

*Id.*, 496 Pa. at 32–33, 436 A.2d at 137–138.

We find the reasoning of the *Rashed* Court to be persuasive in evaluating the foregoing ineffectiveness claim in the instant appeal.[1] The independent basis for the identification was thoroughly explored at the non-jury trial, and

1. This claim of ineffectiveness was clearly raised in appellant's Statement of Matters Complained of upon Appeal Pursuant to Pa.R.A.P. 1925(b) as well as in his supplemental statement. Appellant's second claim of prior counsel's ineffectiveness alleging the absence of probable cause to arrest, see discussion, *infra*, was raised in his Pa.R.A.P. 1925 supplemental statement. Those claims were addressed and rejected by the trial court in its opinion. While those claims were not preserved in appellant's written post-verdict motions, as filed by trial counsel, John D. Cohen, Esquire, they were raised at the first stage at which trial counsel, whose ineffectiveness was claimed, did not represent appellant. The statement and supplemental statement pursuant to Rule 1925 were filed by the Public Defender. That office did not represent appellant at trial or in the filing of post-verdict motions. Thus, those claims were properly preserved under an exception where ineffectiveness of prior counsel is raised to the rule that "[i]ssues not raised in post-verdict motions will not be considered on appeal." *Commonwealth v. Webster*, 490 Pa. 322, 325, 416 A.2d 491, 492 (1980) (citing *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975)). Since the claims of ineffectiveness of counsel were preserved by appellant's second counsel and denied by the trial court, we herein review the trial court's denial of those claims. Appellant is represented on appeal by Claudia C. Sharon, Esquire.

the trial judge had before him the same testimony as would have a suppression court. Hearing that testimony, he rejected the argument of impermissible suggestiveness. It was his province as factfinder to reconcile as he did the initial failure to identify with subsequent positive identifications. The suppression court properly would have denied such a motion as being meritless and found that this initial inability affected the weight, not the admissibility of the in-court identification testimony. Accordingly, we will not find counsel ineffective for failing to raise that claim in a suppression motion.[2] *Rashed.*

■ Appellant claims finally that the trial court erred in rejecting second counsel's claim that trial counsel had been ineffective for failing to challenge appellant's arrest by Detective Utz as lacking probable cause. This Court in *Commonwealth v. Evans*, 305 Pa.Super. 450, 456, 451 A.2d 734, 737, (1982) (quoting *Commonwealth v. Jones*, 271 Pa.Super. 528, 532, 414 A.2d 379, 381 (1979)) reiterated the test for finding probable cause to arrest:

> Probable cause to arrest existed if, at the time appellant was detained by the police, the facts and circumstances known to them and of which they had reasonably trustworthy information, were sufficient to warrant a prudent man in believing that appellant had committed the shooting. *Commonwealth v. Powers*, 484 Pa. 198, 201, 398 A.2d 1013, 1014 (1979). The test is not one of certainties but one of probabilities dealing with considerations of everyday life. *Commonwealth v. Dickerson*, 468 Pa. 599, 605, 364 A.2d 677, 681 (1976). The facts known must be viewed from the vantage point of a prudent, reason-

2. We reiterated in *Commonwealth v. Evans*, 305 Pa.Super. 450, 455, 451 A.2d 734, 736 (1982) the ineffectiveness of counsel analysis:

> In evaluating the above omission in the context of an ineffective assistance claim, we must ask whether the claim foregone bore arguable merit. For it is clear that counsel is not ineffective for failing to raise baseless claims. *Commonwealth v. Hosack*, 485 Pa. 128, 401 A.2d 327 (1979); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). "And we will find a 'reasonable basis' for inaction if the thing not done had no likelihood of success." *Commonwealth v. Ford*, 491 Pa. 586, 594, 421 A.2d 1040, 1044 (1980).

able, cautious police officer on the scene at the time of the arrest guided by his experience and training. *Commonwealth v. Tolbert*, 235 Pa.Super. 227, 230, 341 A.2d 198, 200 (1975).

The lower court correctly rejected this claim as raised in appellant's supplemental statement pursuant to Rule 1925(b). The arrest was the culmination of the week's activities, and the facts to which the other officers, the Bell Telephone repairmen and the victim testified were known to Detective Utz at the time of arrest. We conclude that the testimony of those individuals as detailed above amply supported the finding that Detective Utz had probable cause to arrest appellant. Therefore we will not find counsel ineffective for failing to raise this meritless claim.

█ Appellant claims additionally that there was no evidence supporting a finding that he threatened the victim as required under 18 Pa.C.S.A. § 3701(a)(1)(ii):

§ 3701. **Robbery**

(a) **Offense defined.—**

(1) A person is guilty of robbery if, in the course of committing a theft, he:

. . . .

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]

In *Commonwealth v. Hurd*, 268 Pa.Super. 24, 29, 407 A.2d 418, 420 (1979) (citing *Commonwealth v. Scott*, 246 Pa.Super. 58, 369 A.2d 809 (1976)) this Court concluded that "[t]o sustain a conviction under § 3701(a)(1)(ii), the Commonwealth need not prove a verbal utterance, but may show aggressive actions that threaten serious bodily injury." Here we have appellant climbing through the shop window and saying to Martin: "Get back, Get back." Appellant's mode of entry and his warning to Martin certainly were aggressive actions which implicitly carried with them a threat of imminent bodily harm if Martin failed to comply, and there was therefore sufficient evidence for the trier of

fact to find that element of the robbery offense was proved beyond a reasonable doubt.

Judgment of sentence affirmed.