J-S59022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                      :             PENNSYLVANIA
                                        :
                  v.                    :
                                        :
                                        :
MARZEL D. BRICKHOUSE             :
                                        :
              Appellant          :     No. 666 EDA 2017

Appeal from the Judgment of Sentence February 2, 2017
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s):  CP-46-CR-0002257-2014

BEFORE:   BENDER, P.J.E., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.:                         **FILED DECEMBER 08, 2017**

Marzel D. Brickhouse appeals from the judgment of sentence imposed February 2, 2017, in the Montgomery County Court of Common Pleas.  The trial court sentenced Brickhouse to an aggregate term of 12 to 24 years' imprisonment, following his conviction of robbery (two counts), aggravated assault, criminal conspiracy, theft, receiving stolen property ("RSP") (six counts), simple assault (three counts), and recklessly endangering another person ("REAP").[1]  On appeal, Brickhouse challenges the sufficiency of the evidence supporting his convictions of robbery and aggravated assault, and contends the trial court improperly imposed a mandatory minimum sentence

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S. §§ 3701(a)(1)(ii) and (iv), 2702(a)(1), 903(a)(1), 3921, 3925(a), 2701(a)(1)-(3), and 2705, respectively.

when the Commonwealth failed to provide proper notice. For the reasons below, we affirm in part, reverse in part, and remand for resentencing.

The relevant facts underlying Brickhouse's arrest and conviction are summarized by the trial court as follows:

> At trial, on September 6, 2016, the victim, Mr. Fleetman, testified that he was 67 at the time of the incident, is five feet and four or five inches tall, and is 227 pounds. [Brickhouse] was 46 years old at the time of trial, five [feet,] eleven inches tall, and 225 pounds.
>
> On January 17, 2014, Mr. Fleetman was working the cash register at Citgo gas station. The convenience store had lottery tickets on the counter, and was a little smaller than the courtroom. The area Mr. Fleetman was standing in was small and surrounded by counters and a sink. Mr. Fleetman saw [Brickhouse] enter the store alone and try to enter the bathroom, but it was locked. Mr. Fleetman told [Brickhouse] that he couldn't go into the bathroom which was not a public restroom. Mr. Fleetman [was] unsure if anything was said after that, but a couple seconds later, [Brickhouse] struck Mr. Fleetman in the face right between his eyes. [Brickhouse] also confessed to striking the victim when he was told he couldn't use the bathroom.
>
> [Brickhouse's] punch was so hard that it broke Mr. Fleetman's glasses, caused a busted lip, two black eyes, and a scar from where the glasses were "smashed" into the victim's face. Mr. Fleetman indicated that there was "blood everywhere," that he had never been struck that hard, and that he "wasn't totally knocked out, but [he] was on the floor, and [he], you know, was in pain." When Mr. Fleetman was punched, he was directly to the right of a waist high sink, and after he fell and was on his hands and knees, he saw [Brickhouse] take lottery tickets out. Mr. Fleetman didn't see the punch coming, did not have time to prepare for the punch, did not have a chance to defend himself, and did not believe he would have been able to defend himself against [Brickhouse]. While Mr. Fleetman was on the ground, he testified that he was worried "something else might happen."
>
> Mr. Fleetman was transported to the hospital by ambulance and was in the hospital at least 3-4 hours. Mr. Fleetman needed

stitches, but did not have surgery because he didn't think he needed it, although his nose was broken. Mr. Fleetman stated that he "just never got around to getting it done." Mr. Fleetman remembers swelling to his checks and eyes, both of which were black and blue.

Mr. Fleetman also testified that his vision was blurry for several months, he was in significant pain of a 9 out of 10 scale, and continued to get headaches for several months after the incident which he had never suffered from prior to the incident. Additionally, Mr. Fleetman had trouble breathing after the incident. Although he had previous sinus issues, it was worse after the incident and he had a hard time laying down and sleeping because his nose was crooked.

Mr. Fleetman also appeared to have some partial memory issues from the night stating "I didn't-I don't --- I don't know everything" when asked if he was unable to describe what happened. However, Mr. Fleetman denied having memory loss, but then in response to the question "Because you weren't hurt enough to have a loss of memory, right?" Mr. Fleetman responded "If you say so. I don't know." When asked about his statement to the police, Mr. Fleetman responded "I, you know-I wasn't--- I wasn't really with it, was I, at the time."

Trial Court Opinion, 3/27/2017, at 1-3 (record citations omitted).

On February 11, 2014, Brickhouse gave a statement to police, admitting he struck Mr. Fleetman, and stole two drawers of lottery scratch-off tickets from the gas station. *See* Investigative Interview Record, 2/11/2014, at 4. Further, he acknowledged he and two accomplices drove to various stores around town to cash in any winning tickets. *See id.* at 4-5.

Brickhouse was subsequently charged with four counts of robbery, six counts of criminal conspiracy and RSP, three counts of simple assault, and one count each of aggravated assault, theft, and REAP. He filed a pretrial motion to suppress the statement he provided to the police, which the court denied.

On September 6, 2016, the case proceeded to a non-jury trial. At the conclusion of its case, the Commonwealth withdrew one count of robbery under Section 3701(a)(ii). Thereafter, the trial court found Brickhouse guilty of all of the remaining charges, with the exception of robbery under Section 3701(a)(1)(i). Brickhouse filed a motion for reconsideration on November 22, 2016, which the trial court promptly denied.

On February 1, 2017, the day before the scheduled sentencing hearing, the Commonwealth filed an "amended" notice[2] of its intent to seek a mandatory minimum sentence of 25 years' imprisonment pursuant to Pennsylvania's "Three Strikes" law, 42 Pa.C.S. § 9714. It averred Brickhouse had pled guilty to two prior crimes of violence, both first-degree robberies, in November 1989 and November 1990. *See* Commonwealth's Amended Notice of Intent to Seek Mandatory Sentences, 2/1/2017, at ¶¶ 2-3. The next day, before the start of the hearing, the Commonwealth filed another "amended" notice, in which it acknowledged Brickhouse had been convicted of only one prior crime of violence, the 1990 robbery, and requested a mandatory sentence of 10 to 20 years' imprisonment. *See* Amended Notice of Intent to Seek Mandatory Sentences, 2/2/2017, at ¶ 2. Later that day, the trial court sentenced Brickhouse to an aggregate term of 12 to 24 years' imprisonment. Specifically, the court imposed the mandatory minimum sentence of 10 to 20

_____

[2] The certified record does not include any prior notice filed by the Commonwealth.

years' incarceration for robbery under Subsection 3701(a)(1)(ii), a consecutive term of one to two years' imprisonment for aggravated assault, and a consecutive term of one to two years' incarceration for one count of conspiracy. The court vacated the remaining conspiracy convictions, concluding the facts demonstrated there was only "one conspiratorial act against one victim." N.T., 2/2/2017, at 43. With regard to the remaining charges, the court either found they merged for sentencing purposes or it imposed no further penalty. *See id.* at 43-44. This timely appeal followed.[3]

In his first two issues, Brickhouse challenges the sufficiency of the evidence supporting his convictions of robbery and aggravated assault. Our review of such claims is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually

---

[3] On February 21, 2017, the trial court ordered Brickhouse to file a concise statement or errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Brickhouse complied with the court's directive and filed a concise statement on March 9, 2017.

received must be considered. Finally, the trier of fact while passing on the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealthv. Bragg*, 133 A.3d 328, 330–331 (Pa. Super. 2016), *aff'd*, 169 A.3d 1024 (Pa. 2017).

As indicated above, Brickhouse was convicted of robbery under Subsection 3701(a)(1)(ii).[4] Accordingly, the Commonwealth was required to prove that "in the course of committing a theft," Brickhouse "threaten[ed] another with or intentionally put[] him in fear of immediate serious bodily injury[.]" 18 Pa.C.S. § 3701(a)(1)(ii). The Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. Moreover, "[t]he Commonwealth need not prove a verbal utterance or threat to sustain a conviction under subsection 3701(a)(1)(ii)." *Commonwealth v. Hopkins*, 747 A.2d 910, 914 (Pa. Super. 2000). Rather, "aggressive actions that threatened the victim's safety" may be sufficient to sustain a conviction of robbery. *Id.*

Brickhouse contends the evidence was insufficient to demonstrate he "threatened or intentionally placed the victim in fear of immediate serious bodily injury." Brickhouse's Brief at 15 (emphasis omitted). He emphasizes he "administered a single blow that resulted in broken glasses and a broken

---

[4] We note Brickhouse does not challenge his conviction under Section 3701(a)(1)(iv).

nose," and the victim "never testified that he feared for his life or serious injury." *Id.* at 15-16. Rather, Brickhouse maintains the more appropriate charge for his conduct was under Subsection 3701 (a)(1)(iv), which requires proof that the defendant inflicted, or put the victim in fear of, immediate **bodily injury**, as opposed to serious bodily injury.[5] *See* 18 Pa.C.S. § 3701(a)(1)(iv). *See also* 18 Pa.C.S. § 2301 (defining bodily injury as "[i]mpairment of a physical condition or substantial pain.").

In finding Brickhouse guilty of Subsection 3701 (a)(1)(ii), the trial court relied upon this Court's decisions in **Commonwealth v. Farmer**, 361 A.2d 701 (Pa. Super. 1976) (*en banc*), and **Commonwealth v. Davis**, 459 A.2d 1267 (Pa. Super. 1983). In **Farmer**, the defendant and an accomplice approached the female victim, who was waiting at a bus stop with her brother and uncle. The defendant grabbed her purse, punched her in the face, and fled with his accomplice. **Farmer**, **supra**, 361 A.2d at 701. The defendant was subsequently convicted of robbery under Subsection 3701 (a)(1)(ii). An *en banc* panel of this Court affirmed on appeal, concluding:

> [The defendant] grabbed [the victim's] pocketbook and punched her in the face. An accomplice was present who could very easily, if necessary, have joined [the defendant] in applying force to separate the victim from her handbag. Although the woman did not testify specifically that [the defendant] had verbally threatened her, the trial judge reasonably concluded that, under the circumstances, the victim had been threatened by [the

---

[5] A conviction of robbery under Subsection 3701 (a)(1)(iv) is graded as a felony of the second degree, and would not be subject to a mandatory minimum sentence under the "Three Strikes" law. *See* 18 Pa.C.S. § 3701(b)(1); 42 Pa.C.S. § 9714(g).

defendant's actions] and had been placed in fear of immediate serious bodily injury. In addition, the lower court justifiably concluded that [the defendant] possessed the [i]ntent to place his victim in fear of such injury, since intent can, and in most cases necessarily must, be inferred from the circumstances, and since a punch to the face can easily cause serious injury or even death.

*Farmer*, *supra*, 361 A.2d at 702.

In *Davis*, *supra*, the victim was working an overnight shift at a pipe shop when, at 3:00 a.m., the defendant entered through the transaction window and approached the cash register. The defendant told the victim to "get back" as he took money from the register. *Davis*, *supra*, 459 A.2d at 1268. After locating additional money in a cigar box, the defendant fled the store. The entire encounter lasted approximately twenty seconds. *See id.* In affirming the defendant's conviction of robbery under Subsection 3701(a)(1)(ii), a panel of this Court found the defendant's aggressive actions, which included "climbing through the shop window" and warning the victim to "[g]et back," were sufficient to demonstrate an implicit threat of "imminent bodily harm if [the victim] failed to comply[.]" *Id.* at 1272.

Applying these cases to the facts *sub judice*, the trial court concluded that Brickhouse's act of punching the victim in the face, without provocation, so hard that it broke the victim's nose, is, as in *Davis*, "an aggressive action that implies a threat to the victim's safety." Trial Court Opinion, 3/27/2017, at 6-7. Further, the court found that, similar to the facts in *Farmer*, here, Brickhouse "stole something without saying a word after punching the victim in the face." *Id.* at 7. The court opined this unprovoked violent act implied that the victim would suffer immediate serious bodily injury if he interfered

with Brickhouse's theft of the lottery tickets. *See id.* at 7. We agree with the trial court's analysis.

Further, we find this Court's recent decision in ***Bragg***, ***supra***, instructive. In that case, the defendant was convicted of robbing two banks in broad daylight. Both times, he appeared, without a weapon, and demanded money from the teller. *See **Bragg**, **supra***, 133 A.3d at 329. During the second robbery, he disguised himself by wearing a baseball cap, sunglasses and surgical gloves. When he approached the teller, the defendant "growled, 'What are you looking at?' banged on the counter, and demanded money from the teller, who placed $37,000 in [the defendant's] bag." ***Id.*** at 330. The defendant was later arrested and convicted of, *inter alia*, robbery under Subsection 3701(a)(1)(ii).

Similar to the present case, the defendant in ***Bragg*** argued on appeal that the evidence was insufficient to demonstrate he intentionally placed the victims in fear of **serious bodily injury**, since he only "entered the banks in broad daylight, banged on the counter, and demanded money." ***Id.*** at 332. However, a panel of this Court disagreed. Relying on ***Davis***, the ***Bragg*** panel explained that aggressive actions alone, absent a verbal utterance, may sufficiently imply a threat to the victim's safety. ***See id.*** The panel opined:

> [I]n the instant case, [the defendant's] aggressive actions placed employees and customers of PNC Bank in fear of serious bodily injury. [The defendant] entered the bank, disguised himself with sunglasses and a baseball cap, and equipped with surgical gloves to conceal his fingerprints. When he reached the teller, he sneered, "What are you looking at?" [The defendant] then banged his fists on the counter and demanded that the teller place only

- 9 -

large bills in his bag. While [the defendant] asserts he cannot be guilty of first-degree robbery as he did not brandish a weapon or make a specific verbal threat, this Court has never held that either action is required to sustain a conviction under Section 3701(a)(1)(ii).

*Id.* at 332.

The same is true here. At the time of the incident, Brickhouse was 46 years old, and five feet, 11 inches tall. *See* N.T., 9/6/2016, at 7, 73. The victim was 67 years old, and five feet, five inches tall – 20 years older and half a foot shorter than his attacker. *See id.* at 21 -22. Brickhouse entered the small convenience store and attempted to use the restroom. *See* N.T., 9/6/2016, at 26. After the victim, who was alone behind the counter, told Brickhouse he was not permitted to do so, Brickhouse, without saying a word, punched him in the face. *See id.* at 26-28. Although the victim did not lose consciousness, the blow knocked him to the floor, and broke his glasses and nose. *See id.* at 28-29. Brickhouse then grabbed two trays of lottery tickets and fled. Based on these facts, we agree with the trial court's conclusion that Brickhouse's unprovoked aggressive and violent act was sufficient to establish that he "intentionally put [the victim] in fear of immediate serious bodliy injury" to support his conviction of robbery under Subsection 3701(a)(1)(ii).

Brickhouse, however, insists that administering a "single blow that resulted in broken glasses and a broken nose" would not place the victim in fear of death or serious injury. Brickhouse's Brief at 15. Further, he emphasizes "the victim never testified that he feared for his life or serious injury" and the victim actually "attempted to stop [Brickhouse] during the

altercation." *Id.* at 16. Under our standard of review, viewing the evidence in the light most favorable to the Commonwealth,[6] we find Brickhouse has mischaracterized the evidence. Although it is true Brickhouse only struck the victim once, he did so violently. The victim was also significantly older and shorter than Brickhouse. Moreover, although Brickhouse's attorney insisted that a surveillance photograph showed the victim "trying to stop" Brickhouse,[7] that photograph (which was included in the certified record) showed the elderly victim kneeling on the floor with his hands up, as Brickhouse, who was holding the lottery trays, looked down at him. *See* Exhibit C-2. It does not support Brickhouse's assertion that his actions were **not** intended to place the victim in fear of immediate serious bodily injury. Accordingly, no relief is warranted on his first claim

Next, Brickhouse challenges the sufficiency of the evidence supporting his conviction of aggravated assault. He was convicted under Section 2702(a)(1), which provides:

> A person is guilty of aggravated assault if he … **attempts to cause serious bodily injury to another**, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S. § 2702(a)(1) (emphasis supplied). As noted above, only an injury that "creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily

---

[6] **See Bragg**, **supra**.

[7] **See** N.T., 9/6/2016, at 53-54.

- 11 -

member or organ," constitutes a "serious bodily injury" under the Crimes Code. 18 Pa.C.S. § 2301. Here, the trial court found the evidence was insufficient to prove the victim suffered serious bodily injury. **See** N.T., 9/6/2016, at 103. Accordingly, under the statute, the Commonwealth was required to prove the defendant **attempted** to cause serious bodily injury.

> "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." An attempt under § 2702(a)(1) requires a showing of some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury.
>
> "A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result...." "As intent is a subjective frame of mind, it is of necessity difficult of direct proof." The intent to cause serious bodily injury may be proven by direct or circumstantial evidence.

**Commonwealth v. Matthew**, 909 A.2d 1254, 1257 (Pa. 2006) (internal citations omitted).

In **Matthew**, the Pennsylvania Supreme Court reaffirmed the totality of the circumstances test, first utilized in **Commonwealth v. Alexander**, 383 A.2d 887 (Pa. 1978),[8] to determine whether a defendant possessed the requisite specific intent to inflict serious bodily injury when the victim did not,

---

[8] In **Alexander**, the victim was standing on a sidewalk when the defendant, without warning, struck him in the face with a closed fist. **Alexander**, **supra**, 383 A.2d at 888. Although the victim fell to the ground, he did not lose consciousness. **Id.** The defendant was subsequently convicted of aggravated assault. However, on appeal, the Pennsylvania Supreme Court reversed, concluding that, absent the infliction of serious bodily injury, the circumstances surrounding the attack did not support a finding that the defendant intended to inflict serious bodily injury upon the victim. **Id.** at 889.

in fact, suffer serious bodily injury as a result of the assault. The **Matthew** Court explained:

> **Alexander** provided a list, albeit incomplete, of factors that may be considered in determining whether the intent to inflict serious bodily injury was present, including evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury. **Alexander**, at 889. **Alexander** made clear that "simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault.

**Matthew**, **supra**, 909 A.2d at 1257, *citing* **Alexander**, **supra**. The determination of whether a defendant possessed the specific intent to cause serious bodily injury is made on a case-by-case basis, and "depending on the other circumstances, even a single punch may be sufficient." **Commonwealth v. Dailey**, 828 A.2d 356, 360 (Pa. Super. 2003).

Here, the trial court found that while only one of the **Alexander** factors was present – Brickhouse was "disproportionally larger or stronger than the victim" – that factor was significant, particularly because of the 20-year age difference between the men. Trial Court Opinion, 3/27/2017, at 9, 11. Moreover, the court concluded Brickhouse's actions created a "substantial risk of death." **Id.** at 9. The court explained:

> [Brickhouse] recklessly struck [the victim], risking the elderly man falling and hitting his head in an enclosed space after being punched in the face by someone 2[0] years [younger] and 6 to 7 inches taller. [Brickhouse] struck [the victim] in the face while he

- 13 -

was inside a tiny area surrounded by counter tops with ninety degree edges and a sink right next to him. Any fall in that area carries a substantial likelihood that the individual would strike their head on the counters or sink and cause severe damage to the head. In this case, [Brickhouse] was lucky that [the victim] fell forward on his hands and knees instead of backward where he would have struck his head and sustained much more serious injuries. …

* * * *

Further, while this Court did not find that serious bodily injury was actually caused, this Court did state that the facts were a close call. [The victim's] nose was damaged in the punch, and is still not straight "because he hasn't gotten around to [having it fixed]." That is a permanent disfigurement from [Brickhouse's] punch. That injury also caused breathing issues for a protracted period of time following the punch. [The victim] had headaches and blurred vision for several months as well as significant pain. While [the victim] denied having memory loss, in response to questioning he said he wasn't "with it" and seemed to lack memory of parts of the incident during his testimony. There was a prolonged period of time where there was loss of impairment of bodily functions, and [the victim's] nose is still permanently disfigured.

Therefore, while only one **Alexander** factor is present, it is a significant factor. Further, there is a large age difference which is not explicitly accounted for in **Alexander**. Additionally, the injuries here were much more significant than a minor nose injury. … The addition of these facts and the conditions of the gas station interior establish that [Brickhouse] intended to cause serious bodily injury, and came very close to actually causing serious bodily injury to [the victim]. But for the smallest change in circumstance, [the victim] could have fallen backward, struck his head on the counter or sink, and died.

*Id.* at 9-11.

Brickhouse argues, however, "the trial court improperly imposed liability not for what happened, but for what could possibly have happened in the worst-case scenario." Brickhouse's Brief at 18. We agree.

Brickhouse delivered one punch to the victim's face. Although he was obviously taller and stronger than his victim, Brickhouse did not employ a weapon, did not make any comments verbalizing his intent, and was not restrained from further attack. Indeed, the circumstantial evidence establishes that Brickhouse only wanted to briefly incapacitate the victim so that he could steal the lottery tickets.

Our review of the relevant caselaw leads us to the same conclusion. *See Commonwealth v. Lewis*, 911 A.2d 558, 565 (Pa. Super. 2006) (defendant, in domestic abuse case, punched the victim twice in the face and once in the stomach, stopping only when he was told the police were on their way; victim's injuries, which led to her being placed on a ventilator, "did create a substantial risk of death" so that the evidence was "clearly sufficient to establish that [defendant] causes serious bodily injury or intended to inflict serious bodily injury to [victim]."); *Dailey*, *supra*, 828 A.2d at 361 (although corrections officer/victim did not suffer serious bodily injury, intent to inflict such injury found where defendant/prisoner "delivered at least two closed-fisted blows [to victim] and was forcibly restrained while positioned to continue the attack."); *Commonwealth v. Caterino*, 678 A.2d 389 (Pa. Super. 1996) (intent to inflict serious bodily injury found where defendant punched victim in the face, while victim was sitting in driver's seat of truck, knocking him down, and then struck him again in the face with beer bottle when victim sat up; defendant was prepared to strike again but victim grabbed

hammer from floor of truck and threw it at defendant before driving away), *appeal denied*, 684 A.2d 555 (Pa. 1996).

The Commonwealth, however, contends this Court's decision in **Commonwealth v. Burton**, 2 A.3d 598 (Pa. Super. 2011) (*en banc*), *appeal denied*, 32 A.3d 1257 (Pa. 2011), is instructive, and "illustrates the significant danger and potential for injury inherent even in a single-punch surprise attack on an unsuspecting and unprepared victim, particularly where there is a relevant age disparity." Commonwealth's Brief at 16. In **Burton**, the defendant was described as "significantly larger and stronger" than the 51-year-old victim, who was five feet five inches tall and weighed only 162 pounds. **Burton**, **supra**, 2 A.3d at 601 (citation omitted). After a brief verbal altercation, the defendant struck the victim once. However, the blow rendered the victim unconscious, and resulted in a traumatic brain injury. **Id.** at 599. Moreover, the victim's son testified that after striking the victim, the defendant stated, "I got you, I told you I was going to get you" and was "smiling and laughing." **Id.** at 600.

In affirming the defendant's conviction of aggravated assault, the *en banc* panel explained, "[w]hen a victim actually sustains serious bodily injury, the Commonwealth can, but does not necessarily have to, establish specific intent to cause such harm." **Id.** at 602. Rather, the defendant may be found guilty if he acted "intentionally, knowingly **or recklessly** under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1) (emphasis supplied). Because the **Burton** Court found the

- 16 -

evidence "unequivocally establishe[d] that the victim sustained serious bodily[,]"[9] injury, **Burton** is distinguishable from the case *sub judice*, where the victim did not sustain serious bodily injury.

Nevertheless, the **Burton** Court also held the evidence was sufficient to establish the defendant **intended** to cause serious bodily injury to the victim. **See id.** at 603-605. While noting the defendant was ten years younger, and significantly stronger than the victim, the court emphasized the defendant's "gleeful remarks upon viewing" the victim's severe injuries. **Id.** at 603. The *en banc* panel opined:

> There is no doubt that [the defendant] actually sought to hurt [the victim]. [The defendant] provoked an altercation with the older, lighter, smaller man and landed the blow when the victim was not on guard. After the assault, [the defendant] rejoiced that he had inflicted the injuries that he caused to the victim.
>
> In addition, the evidence herein establishes that while hospitalized, the victim was in real danger of dying. The medical stipulation stated that [the victim] was at a "high risk" of sudden and "fatal" deterioration due to one or more of the injuries that he sustained in the assault. Thus, this case actually is one where death, for some reason, failed to occur despite the fact that the injuries could have caused that result.

**Id.** at 605 (record citation omitted).

The facts presented in the instant case are readily distinguishable from those in **Burton**. Here, Brickhouse punched the older, shorter victim once in the face. He did not attempt to escalate or continue the altercation when the victim appeared to rebound from the blow, nor did he make any comment or

---

[9] **Burton**, **supra**, 2 A.3d at 603.

act in any way that signified his intent to cause serious bodily injury. Rather, we conclude the facts herein are more similar to those presented in *Commonwealth v. Robinson*, 817 A.2d 1153 (Pa. Super. 2003).

In *Robinson*, the victim, a female, accompanied by a male friend, left the bank with $4,000.00 in cash, which the victim carried in a backpack. *Id.* at 1156. As they turned a corner, heading to their car, three males with handguns came running towards them. One of the males grabbed the victim's backpack, but she attempted to hold on to it. When the victim stumbled to the ground during the fray, the assailant "struck her in the back with the handgun resulting in the successful separation of the backpack[.]" *Id.* at 1157. The defendant, one of the males involved, was subsequently convicted of aggravated assault and related charges. *See id.*

On appeal, the defendant challenged the sufficiency of the evidence establishing his intent to inflict serious bodily injury on the victim. *See id.* at 1159-1161. The Commonwealth insisted the intent element was satisfied because the assailant used a blunt object to strike a vital part of the victim's body, namely, her back. Indeed, it maintained the victim was "fortunate" not to have suffered serious bodily injury such as "a broken spine or paralysis." *Id.* at 1159. In rejecting the Commonwealth's argument, the panel opined:

> The Commonwealth seeks to impose criminal liability upon [the defendant], not for what happened, or even for what the assailant intended to have happen, but for what could possibly have happened in the worse case scenario.
>
> The Commonwealth's hypothesis is essentially this: had the assailant struck [the victim] in just the right way, she might have

suffered serious injury, that is, a broken spine resulting in paralysis. Since this theoretically could have occurred, it must be what the assailant intended despite the fact that the victim suffered only some temporary pain and discomfort from the blow delivered and despite the fact that nothing prevented him from inflicting greater injury had he chosen to do so. The Commonwealth's primary proposition may be true. It is conceivable that the blow delivered could have resulted in serious bodily injury. However, the fact that such an occurrence could have happened-in fact, had a remote possibility of occurring-does not mean that the blow was intended to produce that result. Again, we must reiterate, since there was not an actual serious bodily injury inflicted, intent is what governs the classification of the crime committed in striking the blow. More importantly, the circumstances of the assault do not support the inference that the assailant intended to inflict greater injury than that actually inflicted.

Generally speaking, one is presumed to intend the normal consequences of one's actions. When someone punches another, the common experience is that such a blow will deliver pain and discomfort, but, unless the deliverer of the blow is a heavyweight champ striking a vital portion of the head, there is not an expectation that death or serious injury will ensue. This is not to say that serious bodily injury could not result from a punch. Under rare circumstances, death or serious injury can ensue, even when not intended. Nevertheless, while criminal liability might attach for the infliction of serious injury or death in this circumstance, it is based upon a negligent or reckless infliction of that injury, not upon intentional infliction.

*Id.* at 1159-1160 (footnotes omitted). In vacating the aggravated assault conviction, the panel concluded, "there is no indication the blow was delivered for any purpose than to assist in separating the backpack from [the victim's] clutches." *Id.* at 1161.

The facts presented herein are closer to those in *Robinson* and *Alexander*, than those in *Burton*. Brickhouse delivered one punch to the victim before grabbing two trays of lottery tickets and fleeing the scene. He

did not employ a weapon, escalate the attack, or make any threatening statements. Moreover, as this Court held in **Robinson**, the fact that the victim **could have** suffered devastating injuries had he struck a cabinet or sink, is of no moment. The evidence simply does not support a finding that Brickhouse acted with the specific intent to cause serious bodily injury, and accordingly, we are constrained to vacate the conviction of aggravated assault.

We recognize that our decision to affirm Brickhouse's conviction of robbery under Section 3701(a)(1)(ii), might appear to be inconsistent with our decision to vacate his conviction of aggravated assault. However, we disagree. Simply because Brickhouse intended to "put [**the victim**] **in fear of** immediate serious bodily injury,"[10] does not mean he actually intended to inflict serious bodily injury upon the victim. As explained *supra*, the evidence establishes that Brickhouse's aggressive act was intended to intimidate and scare the victim so that he steal the lottery tickets; there was no evidence he intended to cause serious or permanent injuries to the victim. Because our reversal of the aggravated assault conviction will upset the trial court's sentencing scheme,[11] we vacate the judgment of sentence and remand for

---

[10] 18 Pa.C.S. § 3701(a)(1)(ii).

[11] The trial court imposed a consecutive term of one to two years' imprisonment on Brickhouse's conviction of aggravated assault.

resentencing. ***See Commonwealth v. Serrano***, 61 A.3d 279, 287-288 (Pa. Super. 2013).

In his third and final issue, Brickhouse argues it was improper for the trial court to impose a "second strike" mandatory minimum sentence of 10 to 20 years' imprisonment on his robbery conviction because the Commonwealth failed to comply with the notice requirements of 42 Pa.C.S. § 9714(d). Brickhouse's Brief at 29-30.

Section 9714 provides for a mandatory minimum sentence of ten years' incarceration upon a defendant's second conviction of a crime of violence. 42 Pa.C.S. § 9714(a)(1). Here, Brickhouse's conviction of robbery, in the present case, constituted a "second strike" under Section 9714 because he had a prior conviction of robbery in 1990. ***See*** Commonwealth's Amended Notice of Intent to Seek Mandatory Sentences, 2/2/2017, at 1-2. ***See also*** 42 Pa.C.S. § 9714(g). However, Brickhouse insists he is entitled to relief from the mandatory minimum sentence because the Commonwealth failed to comply with the notice requirements under the statute. Subsection (d) requires that "reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing." 42 Pa.C.S. § 9714(d). Brickhouse argues the Commonwealth's notice, provided both the day before sentencing (which incorrectly charged him with a "third strike") and the morning of sentencing (which correctly charged him with a "second strike"), did not constitute **reasonable** notice under the statute. ***See***

Brickhouse's Brief at 29-30. Accordingly, he contends it was improper for the trial court to impose the mandatory minimum sentence.

We find no relief is warranted. As the trial court explains in its opinion, Brickhouse was aware the Commonwealth intended to seek a mandatory minimum sentence pursuant to Section 9714. In fact, the issue was discussed during Brickhouse's trial, although at that time, the Commonwealth mistakenly believed the present conviction would be his "third strike." *See* Trial Court Opinion, 3/27/2017, at 13; N.T., 9/6/2016, at 12-18. Furthermore, when Brickhouse's counsel complained of the inadequate notice at the sentencing hearing, the prosecutor informed the trial court that while the Commonwealth did not file a formal notice until the day before the sentencing hearing, the Commonwealth had "intentionally withheld filing that mandatory [notice]" because they had been having ongoing discussions with defense counsel in an attempt to "try and resolve the case." N.T., 2/2/2017, at 10. Furthermore, the Commonwealth insisted, and the trial court agreed, that Brickhouse's remedy, if any, would be a continuance of the sentencing hearing, which he did not request. *See id.* Accordingly, the trial court found Brickhouse had "more than sufficient notice to prepare a defense and the [Commonwealth's Section 9714] notice was reasonable." Trial Court Opinion, 3/27/2017, at 14. Brickhouse provides us with no authority demonstrating the court's ruling was in error or an abuse of discretion. Accordingly, we find no relief is warranted on this claim.

Therefore, because we conclude Brickhouse's conviction of aggravated assault was not supported by sufficient evidence, we vacate that conviction and remand for resentencing. In all other respects, we affirm.

Judgment of sentence affirmed in part, and vacated in part. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2017